No. 04-099

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 296

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

DANNY C. GOOD,

        Defendant and Appellant.

APPEAL FROM:     The District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 2002-85,
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Kelli S. Sather, Attorney at Law, Hamilton, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Jim Wheelis,
Assistant Attorney General, Helena, Montana

        George H. Corn, County Attorney, Hamilton, Montana

Submitted on Briefs:  August 31, 2004

Decided:  October 26, 2004

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Danny C. Good appeals from the District Court's imposition of restitution. The restitution resulted from an assault to which Good pled *nolo contendre*. We affirm.

¶2     We restate the issues on appeal as:

¶3     1. Are the losses that form the basis for the restitution "pecuniary losses" under § 46-18-243(1), MCA?

¶4     2. Does the restitution constitute an "excessive fine" under Article 2, Section 22, of the Montana Constitution?

¶5     3. Does the restitution constitute cruel and unusual punishment under the United States and Montana Constitutions?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6     This case arises out of an ongoing dispute between two neighbors and their families. Danny C. Good repeatedly berated his next door neighbor, Brian Huseby, for reasons that are not quite clear. Good often justified his uncivil behavior by pointing to an alleged attack by the Husebys' dog on Good's son. Good would frequently hurl verbal abuse upon the Husebys as they exited and entered their own home, challenging Huseby to fights, and, on May 10, 2002, nearly running Huseby off the road and threatening to sexually assault Huseby's daughter. This last incident also involved Good nearly punching Huseby in the jaw and making offensive licking gestures in Huseby's face.

¶7     Less than a month later, Good was charged by Information with criminal endangerment, assault, and disorderly conduct. Subsequently, he was also charged with assault with

2

a weapon, stalking, and, because he thought falsifying the valor of his military service would assist in his defense, tampering with public records or information. At first Good pled not guilty to these charges, but on May 21, 2003, pursuant to a plea agreement, he pled *nolo contendre* to the charges of assault, disorderly conduct, and tampering with public records or information.

¶8 At some time near to the assault, in response to Huseby's repeated complaints to the Sheriff's Department, the Department advised Huseby to install surveillance equipment at his home. At first Huseby refused, but the Department again insisted, this time quite forcefully, that Huseby install the equipment. Thereupon, Huseby paid for the installation and rental of a surveillance video camera at his home. This cost him $825.00. After the installation, Good challenged the presence of the camera as a violation of his family's privacy, and obtained a court order requiring Huseby to take it down.

¶9 At the same time Huseby installed the surveillance camera, he and his family began looking for a new house, feeling that they were not safe living next to Good. They bought a house and moved into it by the Fourth of July, less than two months after the assault. For a period of five months Huseby could not find renters to fill his old house, meaning he had to pay two mortgages during that time. The expense of paying the old mortgage amounted to $5,210.00.

¶10 At sentencing, Good received a two-year deferred sentence for the tampering charge, a concurrent six-month suspended sentence for assault, and two days (already served) for disorderly conduct. In addition, the State requested that Good pay restitution to the Husebys

for the cost of the extra mortgage, the installation and rental of the surveillance equipment, and the legal bills incurred in defending themselves against Good. The court granted the request for the mortgage and surveillance costs, but denied restitution for the legal bills. The restitution totaled $6,035.00. Good now appeals from the imposition of restitution, claiming the mortgage payments and surveillance costs are not "pecuniary losses" as defined in § 46-18-243, MCA, and constitute excessive fines and cruel and unusual punishment in violation of the United States and Montana Constitutions.

## STANDARD OF REVIEW

¶11 Determining the appropriate amount of restitution is a question of law. *State v. Mikesell*, 2004 MT 146, ¶ 14, 321 Mont. 462, ¶ 14, 91 P.3d 1273, ¶ 14. The standard of review of a district court's conclusions of law is whether the conclusions are correct. *Mikesell*, ¶ 14 (citing *State v. Pritchett*, 2000 MT 261, ¶ 18, 302 Mont. 1, ¶ 18, 11 P.3d 539, ¶ 18).

## DISCUSSION

## ISSUE ONE

¶12 *Are the losses that form the basis for the restitution "pecuniary losses" under § 46-18-243(1), MCA?*

¶13 Section 46-18-241, MCA, details that "a sentencing court shall, as part of the sentence, require an offender to make full restitution to any victim who has sustained pecuniary loss, including a person suffering an economic loss." Section 46-18-243(1), MCA, defines "pecuniary" as:

4

(a) all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as medical expenses, loss of income, expenses reasonably incurred in obtaining ordinary and necessary services that the victim would have performed if not injured, expenses reasonably incurred in attending court proceedings related to the commission of the offense, and reasonable expenses related to funeral and burial or crematory services;

. . .

(d) reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense.

We have visited the meaning of this definition before. Recently, in *State v. Thompson*, 2004 MT 131, 321 Mont. 332, 91 P.3d 12, the Defendant, a former building maintenance man, used the building's keys to steal "numerous tools and pawn[] them at a local pawn shop." *Thompson*, ¶ 2. We held that the re-keying of the building was an "out-of-pocket loss" arising out of the Defendant's criminal activities, as covered by § 46-18-243(1)(a), MCA. Before that, in *State v. Brewer*, 1999 MT 269, 296 Mont. 453, 989 P.2d 407, we determined expenses related to the reconstruction of a company's accounts, in the wake of the Defendant's forgeries, to be "out-of pocket losses." *Brewer*, ¶ 23 ("Employer paid accounting firms, employees, labor contractors, a software company, and a locksmith in an attempt to reconstruct his books and repair damage resulting from Appellant's criminal act."). Also, in *State v. Korang* (1989), 237 Mont. 390, 396, 773 P.2d 326, 329, we concluded that a county employee's theft of public funds was within the language of § 46-18-243(1)(a), MCA.

¶14 In all of these cases, the losses of the "victim," as that term is defined in § 46-18-243(2), MCA, were losses that the victim could have recovered through a civil action. In this case, the District Court found that Huseby's mortgage payments were pecuniary losses covered by § 46-18-243(1)(a), MCA, the "civil action" subsection, and his surveillance expenses were pecuniary losses covered by § 46-18-243(1)(d), MCA, the "cooperation" subsection. We address each of these findings in turn.

¶15 First, Huseby's mortgage payments are out-of-pocket losses that he "could recover against [Good] in a civil action" for assault. Section 27-1-317, MCA, states, "For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for *all* the detriment proximately caused thereby, whether it could have been anticipated or not." (Emphasis added.) Assault is such a "breach of an obligation not arising from contract." Good probably did not anticipate that his threats to Huseby and Huseby's family would lead to their moving away. However, the Husebys did move, and considering Good's abominable behavior did so for good reasons. Therefore, Good proximately caused Huseby's extra mortgage payments, and Huseby could recover them in a civil action.

¶16 Good also argues that the mortgage payments are too attenuated from his assault to qualify as damages "arising out of the facts or events constituting the offender's criminal activities." Section 46-18-243(1)(a), MCA. Judging from the plain text of the statute this argument has no merit. Huseby moved his family because Good had repeatedly harassed him, and, while threatening to sexually assault his daughter, assaulted him. The family's move arose "out of the facts or events" of the assault.

6

¶17　In addition, Good seems to make an argument based on the canon of statutory construction known as *expressio unius est exclusio alterius* (the expression of one thing implies the exclusion of another). *See, e.g.*, *Harris v. Smartt*, 2003 MT 135, ¶ 17, 316 Mont. 130, ¶ 17, 68 P.3d 889, ¶ 17 (applying the canon to the Montana Constitution); *Mitchell v. Univ. of Mont.* (1989), 240 Mont. 261, 265, 783 P.2d 1337, 1339 (applying the canon to the definition of "local government units" in § 2-9-111, MCA). He states that nothing in the examples of special damages listed in § 46-18-243(1)(a), MCA, is of a type that includes the Husebys' mortgage payments. Thus, according to the legal principle, the inclusion of the many examples suggests the exclusion of any other type of special damages. However, as Good himself partially concedes, the statute includes the words "without limitation." These words render the *expressio unius* argument void. *Mitchell*, 240 Mont. at 265, 783 P.2d at 1339 (stating that use of the words "includes, but is not limited to" in a statute would nullify *expressio unius*). Although the mortgage payments are not a type of special damages included in the non-exclusive examples of § 46-18-243(1)(a), MCA, they are a type of special damages covered by the statute.

¶18　As far as the costs of the surveillance equipment, these fall under the language of § 46-18-243(1)(d), MCA ("reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense"). Huseby's installation of the equipment was in response to the forceful suggestions of the Sheriff's Department. Huseby did not know how Good would plead to the criminal charges at that point, and the Department apparently hoped the equipment might lead to more evidence

against Good. Therefore, Huseby was "cooperating in the investigation and prosecution of the offense." Section 46-18-243(1)(d), MCA.

## ISSUE TWO

¶19 *Does the restitution constitute an "excessive fine" under Article 2, Section 22, of the Montana Constitution?*

¶20 Good argues that the restitution constitutes an "excessive fine" in violation of the Eighth Amendment of the United States Constitution ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted") and Article 2, Section 22, of the Montana Constitution (identical language, save for "or" instead of "nor"). Unlike most other guarantees of the Bill of Rights, the United States Supreme Court has never applied the Excessive Fines Clause of the Eighth Amendment to the states. *See Browning-Ferris Indus. of Vt. v. Kelco Disposal, Inc.* (1989), 492 U.S. 257, 276 n.22, 109 S.Ct. 2909, 2920 n.22, 106 L.Ed.2d 219, 239 n.22 (reserving judgment on the Clause's incorporation). Understandably, given the incorporation of most other protections afforded to criminal defendants by the Bill of Rights, many state courts have proceeded with the working assumption that the Clause has nonetheless been incorporated. *See, e.g.*, *City of Milwaukee v. Arrieh* (Wis. App. 1997), 565 N.W.2d 291, 294; *Pueblo Sch. Dist. No. 70 v. Toth* (Colo. App. 1996), 924 P.2d 1094, 1099. Given that we interpret the wording of our state's Excessive Fines Clause in the same manner as the Excessive Fines Clause of the Eighth Amendment, however, we need not assume that the federal version has been incorporated, and therefore only address Good's state claim. *State ex rel. Hardy v. State Bd.*

8

*Of Equalization* (1958), 113 Mont. 43, 47-48, 319 P.2d 1061, 1064 (interpreting identical provision of the 1889 Constitution, and extensively citing the United States Supreme Court for authority).

¶21   Before we decide if the restitution constitutes an "excessive fine," we must decide if it is a "fine" in the first place.  In *United States v. Bajakajian* (1998), 524 U.S. 321, 328, 118 S.Ct. 2028, 2033, 141 L.Ed.2d 314, 325, the United States Supreme Court held that in the currency forfeiture context a forfeiture is covered by the Excessive Fines Clause because, "The forfeiture is . . . imposed at the culmination of a criminal proceeding and requires conviction of an underlying felony . . . ."  The government argued that the purpose of the forfeiture was not punitive, and that therefore the Excessive Fines Clause should not apply. The Court disagreed with this characterization of the statute in question, but even so categorically stated that, "Even if the Government were correct in claiming that the forfeiture of respondent's currency is remedial in some way, the forfeiture would still be punitive in part. . . . *This is sufficient to bring the forfeiture within the purview of the Excessive Fines Clause*."  *Bajakajian*, 524 U.S. at 329 n.4, 118 S.Ct. at 2034 n.4, 141 L.Ed.2d at 326 n.4 (emphasis added).

¶22   The above analysis applies to the imposition of restitution in Good's case.  Restitution is only imposed if there is a conviction.  Section 46-18-201(5), MCA.  Furthermore, restitution is not separate from the offender's punishment but is an aspect of it.  Section 46-18-241, MCA ("a sentencing court shall, as part of the sentence, require an offender to make full restitution . . .").  Certainly, restitution is also instituted in order to make the victims of

9

crime whole again. However, as *Bajakajian* tells us, restitution of the kind imposed upon Good is still "punitive in part" and therefore is "within the purview of the Excessive Fines Clause."

¶23    Given that the restitution is subject to the Excessive Fines Clause, and therefore a "fine" for constitutional purposes, we must now determine whether the restitution is "excessive." In *Bajakajian* the Supreme Court announced a test to apply to punitive forfeitures. Given the above discussion demonstrating that the restitution is in some part "punitive," we will apply the *Bajakajian* test here. A restitution award "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334, 118 S.Ct. at 2036, 141 L.Ed.2d at 329. In determining whether the restitution is "grossly disproportional," *Bajakajian* instructs us to first turn to the legislature's determination as to what constitutes an appropriate punishment. *Bajakajian*, 524 U.S. at 336, 118 S.Ct. at 2037, 141 L.Ed.2d at 330.

¶24    In subjecting Good's restitution obligation to the *Bajakajian* test, we conclude that it does not violate the Excessive Fines Clause. Our application involves different considerations than those on display in *Bajakajian*. That case involved a punitive forfeiture, where the offender's only crime was to not report that he was leaving the country with $357,144. *See Bajakajian*, 524 U.S. at 325, 118 S.Ct. at 2032, 141 L.Ed.2d at 324. The district court found that the money was not obtained in an illicit manner, and was to be used for lawful purposes. *Bajakajian*, 524 U.S. at 337-38, 118 S.Ct. at 2038, 141 L.Ed.2d at 331-32. If the offender had reported the $357,144, there would have been no forfeiture. The

relationship between the crime–failing to report–and the fine–the entirety of the funds–was over the line, i.e. it was "grossly disproportional."

¶25     This is generally not the case with a restitution award.  As the Ninth Circuit has stated when applying the *Bajakajian* test to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. 3663A-3664, "'Where the amount of restitution is geared directly to the amount of the victim's loss caused by the defendant's illegal activity, proportionality is already built into the order.'" *United States v. Dubose* (9th Cir. 1998), 146 F.3d 1141, 1145 (quoting *United States v. Dean* (D. Or. 1996), 949 F.Supp. 782, 786).  The legislature has determined that restitution is an appropriate item of punishment.  Through Good's illegal actions Huseby suffered $6,035 in pecuniary losses.  Good was then ordered to pay that amount, that is he was punished.  Good was also judged financially capable of paying the amount.  There is nothing "grossly disproportional" about this obligation.  If for some reason the restitution was beyond Huseby's losses, or if Good was indigent, then Good might possibly satisfy the *Bajakian* test.  However, when the restitution award merely makes the victim whole, and the offender is judged financially capable of paying, it does not violate Montana's Excessive Fines Clause.

### ISSUE THREE

¶26     *Does the restitution constitute cruel and unusual punishment under the United States and Montana Constitutions?*

¶27     Good also claims the restitution violates the Cruel and Unusual Punishment Clauses of the United States and Montana Constitutions.  This claim has no merit.  Given that the

11

charges of tampering with public records or information, assault, and disorderly conduct have maximum sentences of, respectively, ten years in jail or a $50,000 fine, § 45-7-208(2), MCA, six months in jail or a $500 fine, § 45-5-201(2), MCA, and ten days in jail or a $100 fine, § 45-8-101(2), MCA, we can hardly say that the District Court was anything but fair in sentencing Good. *See State v. Bretz* (1979), 185 Mont. 253, 281, 605 P.2d 974, 990 (stating that the substitution of restitution for probation was an "act of mercy").

¶28    We therefore conclude that the District Court was correct in its determination of restitution, and that the restitution is not an excessive fine nor cruel and unusual punishment. The judgment of the District Court is affirmed.


                                        /S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE

12