DA 08-0396

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 340

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOANN ESSIG,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Phillips, Cause No. DC-07-14
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Marta N. Farmer, Attorney at Law, Havre, Montana

      For Appellee:

      Steve Bullock, Montana Attorney General; Matthew T. Cochenour,
Assistant Attorney General, Helena, Montana

      Edward Amestoy, Phillips County Attorney, Malta, Montana

Submitted on Briefs:  September 10, 2009

Decided:  October 20, 2009

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Joann Essig was convicted of four misdemeanor counts of criminal mischief and one misdemeanor count of stalking in the District Court of the Seventeenth Judicial District, Phillips County. The District Court deferred imposition of sentence on each count for one year and ordered that the deferred sentences run consecutively. Essig appeals from conditions imposed on the deferred sentences and from the District Court's order that the deferred sentences run consecutively.

¶2     We restate the issues raised by Essig as follows:

¶3     Issue 1: Did the District Court err in its imposition of restitution for counseling costs of the victims' children?

¶4     Issue 2: Did the District Court abuse its discretion in imposing a condition on Essig's deferred sentences that she is prohibited from owning, possessing, or being in control of any firearms?

¶5     Issue 3: Did the District Court abuse its discretion in imposing as a condition of her deferred sentences a prohibition on Essig using or possessing alcoholic beverages or entering establishments where alcohol is the chief item of sale?

¶6     Issue 4: Is the imposition of five deferred misdemeanor sentences which run consecutively an illegal sentence?

¶7     Essig also objects to imposition of restitution for expenses related to acquiring a handgun. The State concedes that these expenses were improperly imposed. Thus, we do not discuss this issue.

2

## BACKGROUND

¶8 In October 2007, Joann Essig was charged with five counts of criminal mischief, one count of misdemeanor stalking, and four counts of felony stalking. In April 2008, pursuant to a plea bargain, Essig pled guilty to four counts of criminal mischief in violation of § 45-6-101, MCA, and one count of stalking in violation of § 45-5-220(1)(a), MCA, all misdemeanors.

¶9 Essig admitted to vandalizing the property of Dwain and Thora Prellwitz by pouring salt on their flower beds and lawn and to stalking the Prellwitzes. Essig pled nolo contendre to two counts of criminal mischief in violation of § 45-6-101, MCA. The information containing these latter charges alleged that she killed grass in the Prellwitzs' yard in the shape of a pentagram and that she painted a pentagram on U.S. Bureau of Land Management premises with Thora Prellwitz's name in it, using a red substance thought to be animal blood.

¶10 In June 2008, the District Court imposed five consecutive one year deferred sentences. The effect of the judgment is that Essig will be on probation for five years.

¶11 Essig's deferred sentences are, *inter alia*, conditioned on payment of $5,582.03 in restitution; a prohibition on Essig owning, possessing, or being in control of any firearms; and a prohibition on Essig using or possessing alcoholic beverages or entering establishments where alcohol is the chief item of sale.

STANDARDS OF REVIEW

¶12 We review a district court's determination of the amount of restitution due as a finding of fact. Findings of fact regarding the amount of restitution ordered as part of a criminal sentence are reviewed to determine whether they are clearly erroneous. *State v. Heath*, 2004 MT 126, ¶ 13, 321 Mont. 280, 90 P.3d 426.

¶13 Sections 46-18-201(4)(o) and 46-18-202(1)(f), MCA, provide that any reasonable restriction considered necessary for rehabilitation or the protection of the victim or society may be imposed as a condition of a suspended or deferred sentence. We review conditions imposed on a probationary sentence under §§ 46-18-201(4)(o) or -202(1)(f), MCA, to determine if they are reasonable. *State v. Ashby*, 2008 MT 83, ¶ 13, 342 Mont. 187, 179 P.3d 1164. In *Ashby*, the Court held that for a condition to be reasonable it must have a nexus to the offender or the offense. *Ashby*, ¶ 15.

¶14 In addition to the more general sentencing authority to impose probation conditions granted in §§ 46-18-201(4)(o) and -202(1)(f), MCA, the legislature has specifically authorized the imposition of certain conditions on a probationary sentence when a district court concludes that such condition is necessary to obtain the objectives of rehabilitation and the protection of the victim and society. Section 46-18-202(1), MCA. We review for abuse of discretion a sentencing judge's conclusion that a condition of a probationary sentence, which is specifically authorized by statute, is necessary. An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment

4

or exceeds the bounds of reason. *State v. McLaughlin*, 2009 MT 211, ¶ 9, 351 Mont. 282, 210 P.3d 694.

## DISCUSSION

¶15 *Issue 1: Did the District Court err in its imposition of restitution for counseling costs of the victims' children?*

¶16 Essig contends the District Court erred by ordering her to pay restitution for the counseling expenses of the Prellwitzs' minor children. Essig asserts the Prellwitz children are not victims as defined by statute. Essig also asserts that the restitution amounts claimed are unreasonable.

¶17 Section 45-5-220(3), MCA, provides that a district court sentencing a person convicted of stalking may require the payment of all medical, counseling, and other costs incurred by or on behalf of the victim as a result of the offense. When pecuniary loss is sustained by a victim, § 46-18-201(5), MCA, allows a sentencing court to require payment of full restitution. "Victim" within the meaning of this statute includes "any person or entity whom the offender has voluntarily agreed to reimburse as part of a voluntary plea bargain." Section 46-18-243(2)(a)(vi), MCA.

¶18 In her plea agreement, Essig agreed to pay restitution "for damages or losses and all medical counseling and other costs, caused to the [Prellwitz] family and property." The District Court had statutory authority to order Essig to pay the counseling expenses of the Prellwitzs' minor children. Section 46-18-243(2)(a)(vi), MCA.

5

¶19 Essig also contends that restitution imposed by the District Court for travel expenses to counseling incurred by the Prellwitz children, blood testing for one of the children, and the cost of six memory cards for a digital camera are not within the meaning of "pecuniary loss" as described in § 46-18-243(1), MCA.

¶20 Section 46-18-243(1), MCA, defines pecuniary loss as:

(a) all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as medical expenses . . . ;
(d) reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense.

¶21 We conclude that, under the evidence presented to the District Court, these expenses could be recovered in a civil action by the Prellwitzes against Essig and thus, in this case, they are legally imposed as restitution.

¶22 Essig argues the amounts imposed for these expenses were not reasonable. The State requested $11,431 in restitution. After hearing testimony from both sides, including Essig's testimony that many of the expenses were unjustified, the District Court imposed restitution of $5,582.03. The District Court was in the best position to review the evidence and weigh the facts surrounding the claimed expenses. There is evidence in the record concerning the cost of the memory cards, travel, and blood tests. The District Court weighed this evidence and concluded that it supported the inclusion of these items in the restitution amount. The District Court's determination of the amount of restitution due was not clearly erroneous.

6

¶23 *Issue 2: Did the District Court abuse its discretion in imposing a condition on Essig's deferred sentences that she is prohibited from owning, possessing, or being in control of any firearms?*

¶24 Essig objected in the District Court to a restriction on her possession and use of firearms. She appeals from the District Court's imposition of such a restriction as a condition of her deferred sentences.

¶25 Section 46-18-202(1)(b), MCA, provides:

> (1) The sentencing judge may also impose any of the following restrictions or conditions on the sentence provided for in 46-18-201 that the judge considers necessary to obtain the objectives of rehabilitation and the protection of the victim and society: . . .
>      (b) prohibition of the offender's owning or carrying a dangerous weapon[.]

¶26 The condition on Essig's suspended sentence at issue here was imposed under the legislative authority of § 46-18-202(1)(b), MCA. Thus, the *Ashby* requirement of a nexus to the offender or to the offense does not apply. *Ashby*, ¶ 14-15. Rather, the imposition of this condition is reviewed for abuse of discretion. *McLaughlin*, ¶ 9.

¶27 The record in this case reflects that several years earlier Essig was convicted of a concealed weapons violation. Essig testified that she did not know why she committed the offense of stalking, which is classified as an offense against the person in the nature of an assault. *See* Title 45, Ch. 5, MCA. Nor did Essig give any reason for her acts of vandalism using a pentagram symbol and what appeared to be blood. Considering the threatening nature of the offenses and that Essig did not explain her acts, the District Court reasoned her access to firearms must be restricted to assure public safety. The

7

District Court did not abuse its discretion when it concluded that restricting Essig's ownership, possession, and control of firearms was necessary to obtain the objectives of rehabilitation and the protection of the victim and society.

¶28 *Issue 3: Did the District Court abuse its discretion in imposing as a condition of her deferred sentences a prohibition on Essig using or possessing alcoholic beverages or entering establishments where alcohol is the chief item of sale?*

¶29 Essig contends the condition of her deferred sentences prohibiting her from consuming or possessing alcohol or entering establishments in which alcohol is the chief item of sale is unreasonable. Essig did not object to this condition at sentencing and now asks this Court to invoke plain error review to assess its legality.

¶30 Failure to object to an improper condition at or before sentencing results in a waiver of the right to object to that condition for the first time on appeal. *State v. Park*, 2008 MT 429, ¶¶ 20-21, 347 Mont. 462, 198 P.3d 321; *State v. Baker*, 2008 MT 396, ¶ 11, 347 Mont. 159, 197 P.3d 1001; *State v. Stiles*, 2008 MT 390, ¶ 14, 347 Mont. 95, 197 P.3d 966. We have treated probation conditions such as the alcohol restriction involved here as objectionable rather than illegal. *Stiles*, ¶ 12. As Essig did not object in the District Court to the condition of her deferred sentences prohibiting her from using alcohol or entering establishments in which alcohol is the chief item of sale, we will not now consider Essig's argument that there is an insufficient nexus between the prohibition on alcohol and her offenses or her self.

8

¶31     Essig also asks us to invoke plain error to review the condition of her deferred sentences prohibiting her use of alcohol.  This Court may in its discretion review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made, where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial, or may compromise the integrity of the judicial process.  *State v. Taylor*, 2009 MT 161, ¶ 11, 350 Mont. 447, 208 P.3d 422 (citing *State v. Davis*, 2003 MT 341, ¶ 19, 318 Mont. 459, 81 P.3d 484).  We will not undertake a full analysis whenever a party asserts that an issue not properly preserved for appeal constitutes plain error. Such a scenario would nullify the rule requiring an argument to be preserved for appeal, and allow a party to bring virtually any argument before this Court.  *Davis*, ¶ 21 (citing *State v. Daniels*, 2003 MT 247, ¶ 28, 317 Mont. 331, 77 P.3d 224). We decline to undertake plain error review of the restriction on the use of alcohol in Essig's deferred sentences.

¶32     *Issue 4:   Is the imposition of five deferred misdemeanor sentences which run consecutively an illegal sentence?*

¶33     Essig argues the District Court erred by imposing five consecutive one-year deferred sentences because § 46-18-201(1)(a)(ii), MCA, provides that a sentencing judge may defer imposition of sentence for no more than two years upon conviction of a misdemeanor.

9

¶34 Essig pled guilty to five separate misdemeanor offenses. Sentence was deferred for a period of one year on each of these offenses. A deferred sentence constitutes a conviction and a final judgment. *State v. Tomaskie*, 2007 MT 103, ¶ 13, 337 Mont. 130, 157 P.3d 691. Separate sentences for two or more offenses run consecutively unless the court otherwise orders. Section 46-18-401(4), MCA. The District Court did not err in specifically ordering that the five separate deferred sentences run consecutively.

CONCLUSION

¶35 With the exception of the imposition of restitution for expenses related to acquiring a handgun, the judgment of the District Court is affirmed. This case is remanded to the District Court with instruction to vacate the portion of the judgment requiring Essig to make restitution for expenses related to acquiring a handgun.


/S/ JOHN WARNER

We Concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ BRIAN MORRIS



Justice James C. Nelson, concurring in part and dissenting in part.

¶36 For the reasons explained below, I concur in the Court's ultimate resolution of Issues 1, 2, and 3 but dissent as to Issue 4. I also write separately to address the State's arguments regarding our standards of review and conflicting caselaw.

**Issue 1**

¶37 I agree that the District Court's determination of the amount of restitution was not clearly erroneous. Opinion, ¶ 22. But there is more to be said about our review of this issue. Specifically, the State points out that we have reviewed the measure of restitution as a question of law in some cases, *see e.g. State v. Good*, 2004 MT 296, ¶ 11, 323 Mont. 378, 100 P.3d 644; *State v. Mikesell*, 2004 MT 146, ¶ 14, 321 Mont. 462, 91 P.3d 1273, and as a factual matter in other cases, *see e.g. State v. Workman*, 2005 MT 22, ¶ 9, 326 Mont. 1, 107 P.3d 462; *State v. Heath*, 2004 MT 126, ¶ 13, 321 Mont. 280, 90 P.3d 426. The State argues that we should review a district court's determinations regarding the amount of restitution under the latter approach, and I tend to agree. Of course, whether the district court correctly interpreted the requirements of the restitution statutes is always a question of law, which we review de novo. *See State v. Dunning*, 2008 MT 427, ¶ 22, 347 Mont. 443, 198 P.3d 828 ("A trial court's statutory interpretation presents a question of law that we review to determine whether it is correct."). But any factual findings underlying the restitution award should be reviewed to determine whether they are clearly erroneous. *Heath*, ¶ 13.

¶38 The Court apparently agrees, *see* Opinion, ¶¶ 12, 22, but does not acknowledge the cases which stand for a different standard of review.[1] In my view, those cases (e.g.,

---

[1] The Court's failure to address the State's arguments in this regard is perplexing, if not frustrating. In the past, this Court has refused to resolve apparent conflicts in our caselaw on the ground that the State failed to raise and brief the issue adequately. *See e.g. State v. Garrymore*, 2006 MT 245, ¶ 15 & n. 3, 334 Mont. 1, 145 P.3d 946. Yet here, the State properly raises the conflicting standards of review, briefs the issue, and

*Good* and *Mikesell*) should be expressly overruled on this narrow point so as to eliminate any further confusion and inconsistency in our caselaw. The State has properly raised and briefed the conflict, and we should respond accordingly.

**Issue 2**

¶39 The State points out that in light of this Court's decisions in *State v. Ashby*, 2008 MT 83, 342 Mont. 187, 179 P.3d 1164, and *State v. Nelson*, 2008 MT 359, 346 Mont. 366, 195 P.3d 826, "it is unclear whether this Court reviews expressly authorized conditions for legality only or for legality and abuse of discretion." The State also notes that we have articulated two different meanings of "abuse of discretion" in relation to sentencing challenges. Under *Ashby* and *State v. Stiles*, 2008 MT 390, 347 Mont. 95, 197 P.3d 966, a court abuses its discretion if it imposes a condition which lacks a nexus to either the offense or the offender. *See Stiles*, ¶¶ 10, 13. But under *Nelson*, a court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *See Nelson*, ¶ 20.

---

asks us to resolve the conflict, but the Court ignores the State's arguments altogether. If this Court's policy is not to address issues that the parties fail to develop with argument and citation to authority, *see* M. R. App. P. 12(1)f.; *Garrymore*, ¶ 15, then it is unfair and incongruous to ignore such issues when they have been properly raised and briefed.

12

¶40 The State's lack of certainty in this regard is not surprising.[2] *See Stiles*, ¶¶ 19-50 (Nelson, J., concurring in part and dissenting in part). Having detailed my disagreement with the Court's analysis in *Stiles*, I will not repeat those arguments here. I simply note that in the present case, the Court observes that the firearm restriction was imposed under the legislative authority of § 46-18-202(1)(b), MCA, and then reviews the restriction for abuse of discretion. Opinion, ¶¶ 26-27. In so doing, the Court signals that a defendant's failure to object to such a condition in a future case will preclude our review of that condition on appeal. *See Stiles*, ¶¶ 13-14.

¶41 With respect to the State's second point, however, the Court applies *Nelson*'s "arbitrariness" definition of "abuse of discretion," as opposed to *Ashby*'s "nexus" definition, and thus asks whether the District Court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason when it imposed the firearm restriction. Opinion, ¶¶ 14, 26. I could agree with this approach if it weren't for the fact that in *Stiles*, the Court decided that *the nexus analysis* is what we use to determine whether a district court abused its discretion in imposing a sentencing condition. *Stiles*, ¶ 13. Given that holding, the Court's approach here is only bound to create more confusion regarding this Court's review of sentencing conditions. Indeed,

---

[2] Prior to *Stiles*, we used the nexus test to review a sentencing condition for legality and the arbitrariness test to review the condition for abuse of discretion. *See Stiles*, ¶¶ 26-37 (Nelson, J., concurring in part and dissenting in part); *State v. Brotherton*, 2008 MT 119, ¶¶ 10, 24, 342 Mont. 511, 182 P.3d 88; *State v. Herd*, 2004 MT 85, ¶¶ 17, 24-25, 320 Mont. 490, 87 P.3d 1017. In *Stiles*, however, the Court held that we use the nexus test to review a sentencing condition for abuse of discretion, *Stiles*, ¶ 13, thereby creating the apparent conflict identified by the State here.

the Attorney General's office has pointed out that our law in this area is muddled precisely because we have been employing two different definitions of "abuse of discretion" when reviewing conditions of sentence. Yet, rather than resolve the inconsistency in accordance with *Stiles* by applying the nexus test, the Court instead perpetuates and, worse, aggravates the confusion.

¶42 To begin with, the Court asserts that if the condition was "specifically authorized by statute," then the nexus test does not apply. Opinion, ¶¶ 14, 26. But this proposition resolves nothing, as *all* conditions of sentence must be "specifically authorized by statute." *See State v. Hicks*, 2006 MT 71, ¶ 41, 331 Mont. 471, 133 P.3d 206 ("A district court's authority in sentencing a criminal defendant is defined and constrained by statute, and the court has no power to impose a sentence in the absence of specific statutory authority."). Next, the Court asserts that *Ashby*'s nexus test does not apply in the present case; rather, "the imposition of this condition is reviewed for abuse of discretion." Opinion, ¶ 26. But this proposition is self-contradictory, as we have held that sentencing conditions are reviewed for abuse of discretion *using the nexus test*. *Stiles*, ¶ 13. The Court cites *State v. McLaughlin*, 2009 MT 211, ¶ 9, 351 Mont. 282, 210 P.3d 694, in support of its approach. However, *McLaughlin* is not even a sentencing case; rather, it involves the admissibility of evidence and jury instructions. *See McLaughlin*, ¶¶ 9-10. Lastly, the Court concludes that the District Court did not abuse its discretion because restricting Essig's ownership, possession, and control of firearms was "necessary to obtain the objectives of rehabilitation and the protection of the victim and society." As

14

we explained in *Ashby*, however, we use the nexus test to determine whether a condition is "necessary to obtain the objectives of rehabilitation and the protection of the victim and society." *Ashby*, ¶¶ 9, 14-15; *accord Stiles*, ¶¶ 13-14.

¶43 The Court's decision in *State v. Hernandez*, 2009 MT 341, ___ Mont. ___, ___ P.3d ___, makes matters even worse—and in this regard, I agree with Justice Cotter's dissent in that case. The Court again asserts that the nexus requirement does not apply to conditions which are "authorized by statute and rule." *Hernandez*, ¶ 6. It follows from this that the nexus requirement applies only to conditions that are *not* authorized by statute and rule. Yet, no such conditions could ever exist. *Hicks*, ¶ 41. Thus, the Court appears to render the nexus requirement a nullity. The Court then goes on to hold that a standard condition adopted by the Department of Corrections (DOC) and imposed by the district court will be reviewed for arbitrariness. *Hernandez*, ¶ 7.

¶44 Consequently, if one were to attempt to summarize our review of sentences under *Ashby*, *Stiles*, *Hernandez*, *McLaughlin*, and the present case, it would be this: All conditions that are authorized by statute or rule are reviewed under *McLaughlin*'s arbitrariness standard, and conversely all conditions that are not authorized by statute or rule are reviewed under *Ashby*'s nexus test. Opinion, ¶¶ 14, 26; *Hernandez*, ¶¶ 6-7. Furthermore, should the need ever arise to determine whether a condition is "necessary to obtain the objectives of rehabilitation and the protection of the victim and society," we may employ either of two methods: We may review the condition under *McLaughlin*'s arbitrariness standard, Opinion, ¶¶ 14, 26-27, or we may review it for compliance with

*Ashby*'s nexus requirement, *Stiles*, ¶¶ 13-14. It appears that the choice is ours to make on an ad hoc basis. Or, perhaps now we have three layers of analysis: first, legality; second arbitrariness; third, nexus. If the Attorney General was unclear before, he will certainly be baffled now.

¶45 This state of affairs is untenable. Prior to rendering our decision in *Ashby*, we spent months deliberating how we would review conditions of sentence. We settled on the nexus requirement for all conditions. *Ashby*, ¶¶ 9, 15. The Court subsequently clarified in *Stiles* that the approach articulated in *Ashby* "effectively places the nexus analysis under the second inquiry—whether the district court abused its discretion." *Stiles*, ¶ 13. The Court's decisions here and in *Hernandez*, however, render the future application of the nexus test uncertain. The Court has set us back at square one and, moreover, has created a situation in which sentencing courts and DOC have unfettered discretion to impose whatever conditions they want and this Court may pick and choose whatever standard it wants to employ in reviewing those conditions.

¶46 Section 46-18-202(1), MCA, requires all of the conditions listed in subsections (1)(a) through (1)(f)—including the firearm restriction authorized by subsection (1)(b)—to be "necessary" for rehabilitation and the protection of the victim and society. The Court held in *Stiles* that the abuse of discretion prong of our two-pronged standard of review (1. legality + 2. abuse of discretion) requires application of the nexus test to conditions imposed under subsection (1)(f). *See Stiles*, ¶¶ 13-14. I see no reason, and the Court offers none, for adopting a different meaning of "abuse of discretion" for

16

conditions imposed under subsection (1)(b). The nexus requirement is intended to apply to all conditions a court imposes upon a sentence. It is easily understood, and we have ample caselaw interpreting and applying the requirement. For sake of clarity, we should use that test and not manufacture different definitions of "abuse of discretion" for purposes of reviewing different sentencing conditions.

¶47 Turning now to the merits of Issue 2, Essig has shown herself to be impulsive, vengeful, and a loose cannon. She is very familiar with firearms and was convicted of a concealed-weapons offense several years ago. And I agree with the Court that the instant offenses were of a "threatening nature." Opinion, ¶ 27. Thus, I would hold that there is a nexus between the firearm restriction on one hand, and Essig herself and the circumstances of her offenses on the other. The record fully supports the District Court's determination that restricting Essig's possession and use of firearms is "necessary to obtain the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202(1), MCA.

**Issue 3**

¶48 Essig attempts to invoke *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979), and this Court's inherent power of plain error review, *see State v. West*, 2008 MT 338, ¶ 23, 346 Mont. 244, 194 P.3d 683, in order to obtain review of the alcohol condition to which she did not object in the District Court. Yet, Essig fails to make a "plausible" allegation that under existing law, this condition is illegal for *Lenihan* purposes. *See State v. Kotwicki*, 2007 MT 17, ¶ 18, 335 Mont. 344, 151 P.3d 892.

17

Likewise, with respect to plain error review, Essig fails to make the required "threshold showing" that our failing to review the alcohol condition "may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *See West*, ¶ 23. For these reasons, I agree with the Court's decision not to review this condition under either of these exceptions to the timely-objection rule.

**Issue 4**

¶49 Lastly, I maintain the view that sentencing courts do not have the authority to stack deferred impositions of sentence. *See Ingersoll v. State*, 1999 MT 215, ¶¶ 23-30, 295 Mont. 520, 986 P.2d 403 (Nelson, Trieweiler, & Hunt, JJ., dissenting). Thus, I cannot agree with the Court's conclusion under Issue 4 that the District Court did not err in ordering Essig's five deferred sentences to run consecutively.

¶50 For the foregoing reasons, I concur in part and dissent in part.

/S/ JAMES C. NELSON

Justice Patricia O. Cotter joins in the Concurrence and Dissent of Justice James C. Nelson.

/S/ PATRICIA O. COTTER

¶51 I concur with the Court's resolution of Issues 1, 3, and 4. I concur with the resolution of Issue 2, but join in Justice Nelson's special concurrence on that Issue.

/S/ W. WILLIAM LEAPHART

18