05-697

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 195

JOAN K. McCORMICK, f/k/a JOAN K. BREVIG,

       Plaintiff, Respondent and Cross-Appellant,

  v.

CLARK A. BREVIG,

       Defendant, Appellant and Cross-Respondent,

   and

BREVIG LAND LIVE AND LUMBER, a Montana
General Partnership consisting of Joan K. Brevig
and Clark A. Brevig,

       Defendant.

APPEAL FROM:    District Court of the Tenth Judicial District,
                In and For the County of Fergus, Cause No. DV 95-086
                Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

       For Appellant and Cross-Respondent:

           David A. Veeder, Jolane D. Veeder; Veeder Law Firm, Billings, Montana

       For Respondent and Cross-Appellant:

           Michael J. Lilly; Berg, Lilly & Tollefsen, P.C., Bozeman, Montana

Submitted on Briefs:  September 13, 2006

Decided:  August 14, 2007

Filed:

_____
                        Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     This case marks the third appearance before this Court of the dispute between siblings Joan K. McCormick (Joan) and Clark A. Brevig (Clark)[1].

¶2     The litigation began in 1995 when Joan filed suit against Clark and their partnership, Brevig Land, Live and Lumber (the Partnership), seeking an accounting and dissolution.  Clark counterclaimed against Joan for fraud, deceit, negligent misrepresentation, and to quiet title.  Clark also filed a third-party complaint against the Partnership accountants alleging professional negligence.  In *McCormick v. Brevig*, 1999 MT 86, 294 Mont. 144, 980 P.2d 603 (*McCormick I*), we affirmed the District Court's entry of partial summary judgment in favor of Joan on Clark's counterclaim, but determined the court had erred when it granted summary judgment to some of the third-party defendant accountants.  Thus, we reversed and remanded for further proceedings.

¶3     After the remand of *McCormick I*, the District Court held a bench trial resulting in findings of fact, conclusions of law and an order dissolving the Partnership and ordering a winding up of the Partnership's business.  The District Court also appointed a Special Master who prepared a limited accounting of the Partnership's assets.  As a result of that accounting, the District Court ordered Joan to sell her interest in the Partnership to Clark for a fixed amount.  Joan appealed both the order requiring her to sell her Partnership interest to Clark, and the District Court's determination of the amount her interest was

[1] Joan and Clark have also appealed from an Order of the District Court entered after this appeal was filed; Supreme Court. No. DA 06-0483, *McCormick v. Brevig*.  This opinion, along with a stipulation settling several issues, renders the issues raised in the later appeal moot.

worth. In *McCormick v. Brevig*, 2004 MT 179, 322 Mont. 112, 96 P.3d 697 (*McCormick II*), we determined, *inter alia*, that the District Court erred by ordering Joan to sell her Partnership interest to Clark and by not requiring a complete accounting of the Partnership's business to accurately determine the value of each partner's interest. We remanded the case for a full Partnership accounting, a liquidation of the Partnership assets and a distribution of those assets to Joan and Clark based upon their relative contributions to the Partnership.

¶4 On remand, pursuant to our order in *McCormick II*, the District Court appointed a second Special Master to prepare a complete accounting of the Partnership business, contributions of the partners, and Partnership assets. After the Special Master prepared and filed his report (Report), both Joan and Clark filed objections. The District Court held a hearing on these objections and thereafter issued its Findings of Fact, Conclusions of Law and Order, dated September 20, 2005.

¶5 The District Court approved most of the Special Master's recommendations, but made some modifications. Clark then filed a notice of appeal and Joan cross-appealed.

¶6 Subsequent to the parties' notice of appeal, the District Court entered an order allowing Joan to inspect the Partnership property. Although Clark raises an issue in this appeal concerning whether the District Court had jurisdiction to enter the post-judgment order, the inspection has taken place, the issue is moot, and we do not discuss it further.

¶7 Clark raises the following issues on appeal:

¶8	1.	Did the District Court err in ordering that Joan and Clark each owned 50% of the Partnership assets and that Joan had not paid the Partnership for her entire 50% interest?

¶9	2.	Did the District Court err by ordering Joan to pay simple, rather than compound, interest on the amount she owed the Partnership?

¶10	3.	Did the District Court err in ordering a calf-share rental arrangement between Clark and the Partnership, with 70% of the value of the calf crops paid to the Partnership and 30% of such value paid to Clark, rather than 60% to the Partnership and 40% to Clark?

¶11	4.	Did the District Court err by ordering that Clark be reimbursed at the same interest rate carried by a Partnership loan he personally paid, rather than at 10%?

¶12	5.	Did the District Court err by not crediting Clark with a $45,000 cash contribution to the Partnership, which was used to purchase silver owned by the Partnership?

¶13	Joan raises three issues on cross-appeal:

¶14	1.	Did the District Court err in creating a deficit capital account for Joan in connection with her acquisition of one-half of her 50% interest in the Partnership, rather than concluding that she had previously paid for her entire 50% interest?

¶15	2.	Did the District Court err in using a calf crop-share method, rather than a rental method, to calculate the amount owed to Clark as his share of the proceeds of the cattle operation?

¶16  3.  Did the District Court err in ordering Joan to pay one-half of the Special Master's fee?

¶17  Because they are so closely related and concern the same subject, our discussion of Issue One raised by Clark includes our discussion of Cross-Appeal Issue One raised by Joan. Likewise, as they are also closely related and concern the same subject, we include our discussion of Joan's Cross-Appeal Issue Two with our discussion of Clark's Issue Three.

## BACKGROUND

¶18  The factual and procedural background of this epic dispute can be found in *McCormick I* and *McCormick II*. For the sake of brevity, we refer here only to the facts directly related to this third appeal.

¶19  In *McCormick II*, this Court disagreed with the District Court's manner of dissolving the Partnership. We remanded the proceedings to the District Court with specific instructions that a full Partnership accounting be prepared and that the assets of the Partnership be liquidated. On remand, the District Court appointed a certified public accountant as Special Master to:

> [C]onduct a comprehensive investigation of the transactions of the Brevig Land, Live and Lumber partnership and the partners, detailing an accounting of all of the partnership's assets and liabilities, as well as distributions of assets and liabilities to the partners in accordance with their respective interests in the partnership . . . .

¶20  During the seven months of his investigation, the Special Master had unlimited access to the Partnership records. He also met separately with the parties and their attorneys and interviewed witnesses.

5

¶21 In June, 2005, the Special Master filed his Report detailing the transactions of the Partnership, the contributions Joan and Clark made to the Partnership, its assets and liabilities, and recommending a proposed distribution to the partners of the money received on sale of the Partnership assets. The District Court adopted most of the recommendations of the Report, including the Special Master's determination that Joan and Clark were 50/50 owners of the Partnership assets. However, the Special Master recommended that the court order that Joan's capital account was deficient because she had not paid for one-half of her 50% Partnership interest.[2]

¶22 In 1984, Joan and Clark signed an Addendum to their partnership agreement which provided that their respective interests in the Partnership profits would be adjusted annually based on each partner's net contributions. The Special Master specifically concluded that despite the Addendum, Joan and Clark should be treated as 50/50 owners of the Partnership.

¶23 The District Court found that because the Partnership had filed tax returns between 1984 and 2001 indicating that Joan and Clark were 50/50 owners of the Partnership, they had essentially disregarded the formula set forth in the Addendum. Thus, the court agreed with the Special Master that Joan and Clark should be treated as 50/50 owners of the Partnership assets. The District Court also adopted the Special Master's

---

[2] Upon Charles' death, both Clark and Joan received one-half of his estate. Because his estate primarily consisted of his 50% interest in the ranch and his 50% interest in the Partnership, Clark at that time ended up owning 75% of the ranch assets while Joan owned 25% of the assets. Sometime thereafter, Clark and Joan entered into a partnership agreement specifying that Clark owned 75% and Joan 25%. *See McCormick I*, ¶¶ 19-21. However, pursuant to the events discussed herein, Joan acquired an additional 25% of the Partnership assets, thus bringing the parties' respective Partnership interests to 50/50.

6

recommendation that a deficit capital account, owed by Joan be created. Upon sale of the Partnership assets, the amount of this deficit account would be deducted from her share of the proceeds in order to pay for one-half of her 50% interest in the Partnership. In so doing, the court reversed an earlier finding, made prior to the complete accounting, indicating Joan had already paid for her entire 50% interest. The District Court also agreed with the Special Master that simple interest should accrue on the amount Joan owed, at the statutory rate of 10%.

¶24 The result of the District Court's final order is that while Joan purchased an additional 25% interest in the Partnership in 1984, thus making the parties' ownership 50/50, she had not contributed enough to the Partnership to pay for the additional 25%. Thus, in order to correct for this deficiency, as well as other errors made in the administration of the estate of Joan and Clark's father, Charles, a deficit capital account entitled "25% Purchase–Joan McCormick" was ordered.[3] The amount of this account was $343,590, plus simple interest.

¶25 For several years, Clark grazed his cattle on Partnership land without paying the Partnership. With regard to the amount Clark owed the Partnership as a result of the cattle operation, the Special Master concluded in his Report that there were "conflicting issues" concerning both the "calf crop" method advocated by Clark and the "rental" method advocated by Joan. He determined that historically the Partnership sometimes split the calf crop 60/40, but on at least one occasion it had split the calf crop 75/25.

---

[3] See *McCormick I* for a summary of Charles Brevig's involvement in the Partnership and its formation.

7

After considering the matter in the context of the Partnership operation and what he determined to be the custom of the cattle industry, the Special Master recommended to the District Court that a calf crop share method be adopted, with 70% of the proceeds from the sale of calves going to the Partnership and 30% to Clark, as this was the most equitable way to apportion the proceeds from the sale of the calves in question. The District Court adopted this recommendation.

¶26    In 2001, without telling Joan, Clark paid off a Partnership Farm Credit Services loan in the amount of $341,471. The loan was not in default, there is no indication that the Partnership could not have paid it according to its terms, and Clark does not argue that there was a business reason for him to personally pay the loan. The District Court agreed with the Special Master that this repayment by Clark constituted a capital contribution to the Partnership and that the Partnership should, in addition to reimbursing Clark for payment of the debt, pay interest to Clark at 9.25% – the same rate carried by the FCS loan he paid off.

¶27    In his Report, the Special Master did not credit Clark's Partnership account with an additional capital contribution in the amount of the purchase price of silver which he bought for the Partnership as an investment. The District Court adopted the Special Master's recommended valuation of Clark's Partnership interest, with no additional credit for the silver purchase.

¶28    In its final Order the District Court also ordered Joan to pay one-half of the Special Master's fees.

8

¶29 The District Court entered judgment. From that judgment Clark appealed and Joan cross-appealed. We discuss further facts below as they relate to the specific issues.

STANDARD OF REVIEW

¶30 This Court will affirm factual findings of a district court sitting without a jury unless those findings are "clearly erroneous." *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 20, 329 Mont. 129, ¶ 20, 122 P.3d 1220, ¶ 20 (citation omitted). We have adopted a three-part test for determining whether a finding is clearly erroneous:

> "First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended the Court may still find that a finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the [C]ourt with the definite and firm conviction that a mistake has been committed."

*Leichtfuss*, ¶ 20 (quoting *Interstate Prod. Credit v. DeSaye*, 250 Mont 320, 323, 820 P.2d 1285, 1287 (1991)).

¶31 Our review of a district court's conclusions of law is plenary and we must determine whether the court's interpretation of the law is correct. *Leichtfuss*, ¶ 21 (citation omitted).

APPEAL ISSUE ONE AND CROSS-APPEAL ISSUE ONE

¶32 **Did the District Court err in ordering that Joan and Clark each owned 50% of the Partnership assets and that Joan had not paid the Partnership for her entire 50% interest?**

9

**¶33 Did the District Court err in creating a deficit capital account for Joan in connection with her acquisition of one-half of her 50% interest in the Partnership, rather than concluding that she had previously paid for her entire 50% interest?**

¶34 Clark first claims that the District Court erred when it used the formula set out in the Addendum described in ¶ 22 above to increase Joan's ownership in the Partnership from 25% to 50% as of January 1, 1984, but did not subsequently apply this same formula to decrease her share in later years. Clark also argues that Joan judicially admitted that the Addendum controls the determination of their Partnership interests and, thus, she should be judicially estopped from arguing against the Addendum's application.

¶35 Clark then argues that the "deficit capital account" created by the Special Master does not constitute "money" or "other property" as described in § 35-10-106, MCA. Thus, according to Clark, Joan had not contributed sufficient value to the Partnership to justify the increase in her Partnership ownership from 25% to 50%.

¶36 Joan agrees with the District Court that she has a 50% interest in the Partnership. She cross-appeals the District Court's order requiring her to pay for her additional 25% interest by establishing a deficit capital account, as recommended by the Special Master.

¶37 Joan argues that the District Court had previously determined, both as a matter of law and as a matter of fact, that she and Clark were 50/50 owners of the Partnership. According to Joan, Clark did not appeal this determination and, pursuant to our decision in *McCormick II*, it is finally established as the law of the case that she owns a 50% interest in the Partnership, and that she has paid for her entire interest. Thus, she argues, these determinations are not subject to further appellate review. In the alternative, Joan

10

argues that the District Court found as a matter of fact that the she and Clark are 50/50 owners of the Partnership and this finding is not clearly erroneous.

¶38 The law of the case doctrine expresses the practice of courts generally to refuse to reopen what has been decided. *Scott v. Scott*, 283 Mont. 169, 175, 939 P.2d 998, 1001-02 (1997). Frequently law-of-the-case terminology is used by courts when deciding whether to deny appellate review of an issue that has not been properly preserved for appeal in the trial court or otherwise has not been presented to an appellate court properly. Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* vol. 18B, § 4478.6, 815 (2d ed., West 1990). The law of the case binds the parties only on those issues that the Court has previously decided. *In re Estate of Snyder*, 2007 MT 146, ¶ 27, 337 Mont. 449, ¶ 27, 162 P.3d 87, ¶ 27. Under the doctrine of law of the case, a legal decision made at one stage of litigation which is not appealed when the opportunity to do so exists, becomes the law of the case for the future course of that litigation and the party that does not appeal is deemed to have waived the right to attack that decision at future points in the same litigation. *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 897 (2d Cir. 1997) (quoting *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir. 1995) (citation omitted)).

¶39 In its Findings of Fact and Conclusions of Law dated April 1, 2000, the District Court decided, as a matter of law, that "[w]hen the partnership is dissolved, Joan shall be treated as a 50% partner . . . . " In *McCormick II* Joan did not appeal the conclusion that she owned 50% of the Partnership. Although Clark filed a cross-appeal, he did not appeal the court's conclusion that Joan was a 50% partner. This Court did not disturb the

11

District Court's conclusion that Joan and Clark each owned 50% of the Partnership assets. Nor did our remand in *McCormick II* order the District Court to revisit the issue of the parties' respective ownership percentages. Rather, we directed the District Court to conduct a full accounting of the Partnership's assets. *McCormick II*, ¶ 51. Thus, the determination that Clark and Joan each own 50% of the Partnership assets is the law of this case and Clark is bound thereby.

¶40 Joan, in her first issue presented on cross-appeal, argues that it is also the law of the case that she has paid for her entire 50% interest in the Partnership. Thus, according to Joan, the District Court erred in finding she had not paid for her additional 25% interest and in adopting the Special Master's recommendation that a deficient Partnership account be assigned to her.

¶41 After our remand in *McCormick I*, the District Court entered judgment concluding that the Partnership was dissolved, that Joan must sell her interest to Clark, and that the partial accounting of the Partnership was sufficient to show the amount that Clark had to pay to purchase Joan's Partnership interest. In *McCormick II* this Court disagreed with the District Court, analyzed the case differently, and reversed. We concluded that while the Partnership was dissolved, the law required that its assets be liquidated at a public sale. We also concluded that the accounting upon which the District Court determined the value of Joan's partnership interest was incomplete and therefore reversed and remanded, ordering that the District Court conduct a complete Partnership accounting. *McCormick II*, ¶ 51. In this instance, the percentage of ownership Joan has in the assets of the Partnership is a separate matter from whether she owes a debt to the Partnership for

the acquisition of her ownership interest. By ordering a complete Partnership accounting, this Court necessarily reversed the District Court's conclusion that Joan had completely paid for her Partnership interest, and remanded for a determination of the status of each partner's Partnership account. Thus, while the doctrine of law of the case establishes that Joan owns 50% of the Partnerships assets, it is not the law of the case that Joan has completely paid for her 50% Partnership interest.

¶42 Joan also argues that Clark is judicially estopped from claiming she has not fully paid for her Partnership interest. According to Joan, because Clark previously settled his third-party claims against prior Partnership accountants, arising from their Partnership record-keeping, creating a deficit capital account which she must pay might result in a double recovery for Clark.

¶43 Clark is not judicially estopped from receiving an additional $343,590 upon sale of the Partnership assets because he settled a claim against previous Partnership accountants. Judicial estoppel applies to declarations made in a court proceeding and prevents a party from taking inconsistent positions in a subsequent proceeding. *Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 15, 307 Mont. 45, ¶ 15, 36 P.3d 408, ¶ 15. Joan refers to no judicial declaration made by Clark in his claim against the accountants which is inconsistent with his claims against Joan or the Partnership. The District Court specifically found that the proceeds from Clark's settlement with the accountants were not relevant to the full accounting of the Partnership's affairs as it was not a party to the settlement. Joan points us to no contrary evidence.

¶44 The District Court did not err in concluding that Clark and Joan each owned 50% of the Partnership's assets, but that Joan had not paid for her additional 25% interest, resulting in a deficit capital account in the amount of $343,590, plus interest, which was to be deducted from her share of the proceeds of the sale of the Partnership assets.

APPEAL ISSUE TWO

¶45 **Did the District Court err by ordering Joan to pay simple, rather than compound, interest on the amount she owed the Partnership?**

¶46 Clark claims the District Court erred when it ordered that Joan pay simple, rather than compound, interest on the amount she owed the Partnership for the purchase of her additional 25% interest. He says Joan essentially owes a debt that is in default and analogizes Joan's deficit capital account to a default on a Farm Credit Services loan. He argues that because compound interest is charged on default of such loans, Joan should pay compound interest on her deficit capital account.

¶47 Joan argues that if she does have a deficit capital account, it should not bear interest. She alternatively argues that if she is to be charged interest, it should be simple, rather than compound.

¶48 Section 31-1-106(1), MCA, provides that interest is payable on all money owed. However, the statute does not provide that interest is not to be compounded. At common law, compound interest was not allowed. *Wilson v. Davis*, 1 Mont. 183, 195 (1870); *Curtis v. Valiton*, 3 Mont. 153, 155 (1878). With the adoption of the Code of 1895, the Legislature determined that parties were free to agree in writing to compound interest. Civil Code of 1895, § 2587, now § 31-1-109, MCA; *Stanford v. Coram*, 26 Mont. 285,

14

293-94 (1902).  Section 31-1-109, MCA, provides that interest is compounded if the parties so agree in writing.  Under the canon *expressio unius est exclusio alterius* we interpret the expression of one thing in a statute to imply the exclusion of another.  *State v. Good*, 2004 MT 296, ¶ 17, 323 Mont. 378, ¶ 17, 100 P.3d 644, ¶ 17.  In the absence of an express agreement in writing between the parties, Montana law does not provide for compound interest.  The District Court did not err when it determined Joan must pay simple interest on her deficit capital account.

APPEAL ISSUE THREE AND CROSS-APPEAL ISSUE TWO

¶49 **Did the District Court err in ordering a calf-share rental arrangement between Clark and the Partnership, with 70% of the value of the calf crops paid to the Partnership and 30% of such value paid to Clark, rather than 60% to the Partnership and 40% to Clark?**

¶50 **Did the District Court err in using a calf crop share method, rather than a rental method, to calculate the amount owed to Clark as his share of the proceeds of the cattle operation?**

¶51 Clark claims the District Court erred when it adopted the Special Master's calf crop split for his cattle's use of the Partnership property, with 70% going to the Partnership and 30% going to Clark.  According to Clark, the split ought to be 60% to the Partnership and 40% to him.  He points out that his retained expert said the court should use a 60/40 split and that this witness was the only expert to offer testimony on this issue.  Clark also argues that by adopting a 70/30 split, the District Court erred by ignoring the law of the case which had established that a 60/40 split was industry custom.

15

¶52 Clark argues that the Special Master's basis for recommending a 70/30 split of the calf crop was error because it was based on an opinion of one Glen Hough. According to Clark, Hough's opinion was inadmissible because it was hearsay and because Hough was not disclosed as an expert witness.

¶53 Absent a party's specific request, a report from a Special Master is not generally subject to the Montana Rules of Evidence. M. R. Civ. P. 53(c). The relevant portion of M. R. Civ. P. 53(c) provides:

> When a party so requests, the master shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in the Montana Rules of Evidence for a court sitting without a jury.

¶54 As we indicated in *McCormick II*, absent a request, the Special Master "was not obligated to make a record of the evidence offered and excluded in the same manner and subject to the same limitations as provided in the Montana Rules of Evidence for a court sitting without a jury." *McCormick II*, ¶ 56. Also, if the rules of evidence were to apply to the information upon which the Special Master bases his recommendations, Clark would be required to object to the admission of this evidence in order to establish error on the part of the District Court. M. R. Evid. 103(a)(1); *In re Parenting of K.P.*, 2005 MT 297, ¶ 16, 329 Mont. 337, ¶ 16, 124 P.3d 1091, ¶ 16.

¶55 Clark makes no citation to the record where he requested that the Special Master follow the rules of evidence in gathering information upon which to base his recommendations. M. R. App. P. 23(a)(4) requires that a party cite to portions of the record upon which he relies. It is not the duty of this Court to search the record. If

16

counsel does not cite that portion of the record where a necessary request or a necessary objection is made, we will presume that the district court did not err. *See Toole v. Weirick*, 39 Mont. 359, 364, 102 P. 590, 592 (1909); *Johansen v. Dept. of Nat. Resources and Conserv.*, 1998 MT 51, ¶ 24, 288 Mont. 39, ¶ 24, 955 P.2d 653, ¶ 24 (citations omitted). Because Clark cites to no portion of the record where the Special Master was requested to apply the Rules of Evidence, and further cites to no portion of the record where he made an objection to the admissibility of the Master's recommendation of a 70/30 split of the calf crop proceeds, we decline to consider this argument. *Seltzer v. Morton*, 2007 MT 62, ¶ 158, 336 Mont. 225, ¶ 158, 154 P.3d 561, ¶ 158.

¶56 The District Court, in adopting the recommendation for a 70/30 calf crop split, found that it was supported both by historical use of the Partnership property and the Special Master's own research into industry standards. This finding of fact is supported by substantial evidence in the record and is not clearly erroneous.

¶57 Nor was a 60/40 calf crop split the law of the case. Although the District Court did previously find that a calf crop share agreement was consistent with industry custom or practice, that agreement was between Clark and an accountant – not between Clark and Joan. *See McCormick I*, ¶¶ 116-17. Also, all the District Court found in 1996 was that such sharing of the calf crop "was consistent with industry custom and practice." Even if the cattle share to which the District Court referred was a 60/40 split (which is not established by the record), such finding does not require that this one year's agreement applied to all other years at issue in this litigation or to an agreement between Joan and Clark. The District Court's finding that a 1996 agreement concerning a calf

17

crop was consistent with industry custom and practice did not establish law of the case that must be followed in the September 20, 2005, judgment. *Estate of Snyder*, ¶ 27.

¶58　We turn now to Joan's cross-appeal concerning the cattle. Joan argues that the District Court erred in adopting the Special Master's recommendation that a calf crop share arrangement be used, as opposed to a "rental" method wherein the Partnership land is rented to Clark for a fixed amount. According to Joan, she and Clark had an implied agreement for grazing cattle on the Partnership property which provided for a rental of the land. She claims that the calf crop share method adopted by the District Court resulted in a $254,663 loss to the Partnership rather than a profit of $134,000 which would have been realized if a rental method was used.

¶59　Although Joan claims that an implied agreement existed between the Partnership and Clark allowing him to run his cattle on Partnership property, like Clark, she cites to no part of the record wherein she offered evidence of this alleged agreement. Nor does she cite to any part of the record where she argued to the District Court that it existed. M. R. App. P. 23(a)(4), which requires a party to cite to the portions of the record they rely upon in making an argument, applies to her as well as to Clark. We will not further consider Joan's argument that the District Court erred in determining how the Partnership would be compensated by Clark for the use of its land to run his cattle.

## APPEAL ISSUE FOUR

¶60　**Did the District Court err by ordering that Clark be reimbursed at the same interest rate carried by the Partnership loan he personally paid, rather than at 10%?**

¶61 In 2001 Clark personally paid a Partnership Farm Credit Services loan. He claims the District Court erred in ordering that he be paid interest on the amount of this payment at the rate of the loan he paid, 9.25%, rather than at 10%.

¶62 Section 35-10-401, MCA, provides:

> (4) A partnership shall repay a partner who, in aid of the partnership, makes a payment or advance beyond the amount of capital the partner agreed to contribute.
> (5) A payment made by a partner that gives rise to a partnership obligation under subsection (3) or (4) constitutes a loan to the partnership. Interest accrues from the date of the payment or advance.

¶63 Section 35-10-105(2), MCA, provides:

> If an obligation to pay interest arises under this chapter and the rate is not specified, the rate is that specified in 31-1-106.

Section 31-1-106, MCA, fixes interest at 10 % when no other rate is specified.

¶64 Clark argues that he made a loan to the partnership when he paid the Farm Credit Services loan, that no interest rate was specified, and therefore he must be paid interest at 10%.

¶65 Joan responds by arguing that the payoff was a capital contribution by Clark to the Partnership. Furthermore, because Clark acknowledged that he was paying the loan off at a rate below 10%, requiring the Partnership to pay the loan back at 10% would unfairly allow Clark to personally profit at the expense of the Partnership.

¶66 The District Court found Clark's payment of the loan benefited the Partnership. However, the District Court also adopted the Special Master's recommendation that the payoff be treated as a capital contribution, bearing simple interest at the same rate as the Partnership loan Clark paid, rather than the 10% provided for by § 31-1-106, MCA.

19

¶67    The record establishes that Clark, with no notice to his partner Joan, personally paid a Partnership loan bearing an interest rate of approximately 9.25%. The loan was not in default, and there is no evidence that the Partnership could not have paid the loan according to its terms. Clark, who was in complete control of the Partnership, made no arrangements for repayment. Specifically, the Partnership and Clark did not agree on an interest rate. Now, in addition to being repaid with interest, Clark has the temerity to argue that he is owed an additional $53,492 by charging the Partnership 10% interest on a loan it could have paid at 9.25%.[4]

¶68    A partner owes a fiduciary duty to other partners. *Wilson v. Wilson*, 64 Mont. 533, 543, 210 P. 896, 899 (1922). Section 35-10-405(2)(b), MCA, imposes a duty of loyalty on a partner to refrain from dealing with the partnership as a party having an interest adverse to the partnership, without the consent of the other partners. Also, § 35-10-405(5), MCA, imposes a duty of good faith and fair dealing on partners.

¶69    Clark, acting unilaterally, with no business reason, paid a Partnership loan carrying a 9.25% interest rate, and now seeks to charge the Partnership 10% interest and keep the profit personally, to the detriment of his partner. This, in effect, constitutes dealing with the Partnership as a party with an adverse interest. Likewise, it is a violation of good faith and fair dealing for a partner, with no business reason, to substitute a 9.25% Partnership loan payable to a third party with a 10% loan payable to that partner.

---

[4] The record indicates that Clark has already benefited personally in the transaction. It appears that he borrowed the money to pay off the Farm Credit Services loan from his family at a lower rate than the 9.25% it carried. Thus, he will make a profit on the transaction.

¶70 It would be unlawful and inequitable to reverse the District Court and order that Clark be paid 10% interest on the amount used to pay the Farm Credit Services loan and we decline to do so.

APPEAL ISSUE FIVE

¶71 **Did the District Court err by not crediting Clark with a $45,000 cash contribution to the Partnership, which was used to purchase silver owned by the Partnership?**

¶72 Clark claims the District Court erred when it adopted the Special Master's recommended accounting because it did not credit him for money he personally advanced to purchase silver owned by the Partnership. According to Clark, because the silver was purchased with life insurance proceeds belonging to him, the Special Master was wrong to list the silver as a Partnership asset and not credit him with a contribution to the Partnership.

¶73 Initially, the references Clark makes to the record do not support his argument that he personally supplied the funds used to purchase the silver. Clark contends that Joan agreed that the funds used to purchase the silver came from life insurance proceeds that were his personal property. In support of this contention, Clark cites to a 1995 deposition of Joan. This deposition, however, was not introduced into evidence in this proceeding. Even so, in her deposition, Joan states that she does not know who the beneficiary of the life insurance policy was.

¶74 Clark states in his brief, in a conclusory fashion, that the life insurance proceeds used to purchase the silver belonged to him. However, he cites to nothing in the record to support this contention.

¶75 Even if Clark did use his own money to purchase the silver, he does not cite us to any testimony from himself, the Special Master, or anyone else, to the effect that the Special Master did not credit him with contributing enough to the Partnership to purchase the silver. The Report does credit Clark with a $68,000 contribution from "life insurance." This could well be a credit for the life insurance proceeds, a part of which were used to purchase the silver.

¶76 As there is no citation to the record supporting Clark's argument that the District Court erred as required by M. R. App. P. 23(a)(4), we will not consider this issue further. *Seltzer*, ¶ 158.

CROSS-APPEAL ISSUE THREE

¶77 **Did the District Court err in ordering Joan to pay one-half of the Special Master's fees?**

¶78 Joan claims the District Court erred when it required her to pay one-half of the Special Master's fee to prepare the Partnership accounting. According to Joan, she should not be required to pay any part of such fee because she did not request the Special Master's services and because the Special Master's work was solely for Clark's benefit.

¶79 Clark argues that the District Court did not abuse its discretion in ordering that she pay half the Special Master's fee because Joan herself requested a "comprehensive investigation" of the Partnership's transactions in *McCormick II*.

¶80 In this instance the Special Master was appointed pursuant to M. R. Civ. P. 23(a), which provides that the District Court shall fix his compensation and the manner of payment. It is within the discretion of the District Court to determine what share of a special master's fee shall be paid by a party.

¶81 In *McCormick II*, Joan complained that the accounting was "inadequate as it was limited to a review of tax returns." *McCormick II*, ¶ 47. It was, at least in part, Joan's complaint about the inadequacy of the accounting which caused us to remand this case for a full Partnership accounting in *McCormick II*. Joan has benefited from that accounting. We conclude that the District Court did not abuse its discretion in ordering that Joan pay one-half of the Special Master's fees.

## CONCLUSION

¶82 The Order of the District Court dated September 20, 2005, is affirmed.

/S/ JOHN WARNER

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE

23