JUSTICE NELSON
dissents.
¶32 I dissent from the Court’s Opinion in this case because S.J.D. did not have standing to bring a petition for termination of B.J.M.’s parental rights, and because S.J.D. did not follow the required *179 statutory procedure in petitioning to adopt K.P.M. I am not suggesting here that B. J.M. should be granted sole custody of K.P.M., or even that B.J.M. should be granted unlimited visitation with K.P.M., nor am I unmindful of what may be in the best interests of K.P.M. I am simply stating that B. J.M.’s fundamental right to parent K.P.M. should not be terminated without following the proper statutory criteria set forth by the Legislature.
¶33 The Majority complain that “[njowhere, in either party’s pleadings, in their proposed findings of fact and conclusions of law, in the evidence at the hearing, in the post-hearing briefing, in the District Court’s order, or in the briefing to this Court, is there any contest to the fact that S.J.D. has standing to petition to terminate B.J.M.’s parental rights and to adopt K.P.M.” Opinion, ¶ 20. However, the Majority ignore the fact that standing is a doctrine involving justiciability and, as such, it is a threshold requirement in every case which we must address and decide sua sponte even if it is not raised by a litigant. See Matter of Paternity of Vainio, 284 Mont 229, 235, 943 P.2d 1282, 1286 (1997). The standing requirement cannot be waived by failure to, or agreement not to, object. Armstrong v. State, 1999 MT 261, ¶¶ 3-5, 296 Mont. 361, 989 P.2d 364 (internal citations omitted); Jones v. Montana University System, 2007 MT 82, ¶ 48, 337 Mont. 1, 155 P.3d 1247, cert. denied, _ U.S. _, 128 S. Ct. 401 (2007). If a party seeking to invoke the jurisdiction of the court does not meet the minimum constitutional requirements for standing, the court must dismiss the action for lack of jurisdiction. See In re Parenting of D.A.H., 2005 MT 68, ¶ 8, 326 Mont. 296, 109 P.3d 247; Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103-04, 118 S. Ct. 1003, 1017 (1998); Raines v. Byrd, 521 U.S. 811, 818-20, 829-30, 117 S. Ct. 2312, 2317-18, 2322-23 (1997); Warth v. Seldin, 422 U.S. 490, 501-02, 95 S. Ct. 2197, 2206-07 (1975).
¶34 The Montana Adoption Act (Title 42, MCA) was enacted in 1997 as part of a general revision and recodification of Montana’s adoption statutes. See 1997 Mont. Laws, chapter 480. The Adoption Act sets forth specific procedures to be followed in the adoption of a child. For example, § 42-1-107(1), MCA, provides that “[a]n adoption decree may not be entered if the child who is the subject of an adoption proceeding is not legally free for adoption.” And, § 42-2-602, MCA, provides that “[a] child is not legally free for adoption until the parental rights of the birth parent or parents have been terminated by a court: (1) as provided in this title [Title 42]; [or] (2) pursuant to Title 41, chapter 3 *180 [the Child Abuse and Neglect Act][1]....”
¶35 Section 42-2-603, MCA, provides that, under Title 42, a petition for termination of parental rights may be filed by (1) the Department of Public Health and Human Services (DPHHS); (2) a licensed child-placing agency; (3) the prospective adoptive parent to whom a relinquishment has been issued; or (4) a guardian with custody of the child. Because S.J.D. is not one of the parties listed in this statute, she does not have standing to bring a petition for termination of B.J.M.’s parental rights.
¶36 An “agency” is defined in § 42-1-103(4), MCA, to mean “a child placement agency licensed by the state of Montana pursuant to Title 52, chapter 8, that is expressly empowered to place children preliminary to a possible adoption.” In this case, neither DPHHS nor a licensed child-placing agency was involved in S.J.D.’s attempt to adopt K.P.M. or in bringing a petition to terminate B.J.M.’s parental rights. Consequently, neither of these two provisions of the statute confer standing on S.J.D.
¶37 Section 42-2-603(2), MCA, also provides that a termination of parental rights may be filed by “the prospective adoptive parent to whom the relinquishment is issued [emphasis added].” “Relinquishment” is defined at § 42-1-103(18), MCA, as the “informed and voluntary release in writing of all parental rights with respect to a child by a parent to an agency or individual [emphasis added].” Hence, § 42-2-603(2), MCA, contemplates that the birth parent or parents have voluntarily relinquished their parental rights in favor of the adoptive parent and consented to the adoption.
¶38 In the case sub judice, S.J.D. claimed in her Petition for Adoption that B.J.M. had executed a Consent to Adoption, however, no Consent to Adoption by B.J.M. was filed with the petition, nor was one ever filed. B.J.M. did not voluntarily relinquish her parental rights, nor did she consent to the adoption. Thus, S.J.D. does not have standing to petition for termination of parental rights under this provision of the statute.
¶39 In addition, § 42-2-603(2), MCA, provides that a petition for termination of parental rights may be filed by a guardian with custody of the child. While the term “guardian” is not defined in the Adoption *181 Act, it is defined in the Montana Youth Court Act (Title 41, chapter 5, MCA) at § 41-5-103, MCA, as follows:
(21) “Guardian” means an adult:
(a) who is responsible for a youth and has the reciprocal rights, duties, and responsibilities with the youth; and
(b) whose status is created and defined by law. [Emphasis added.]
Similarly, “custody” is not defined in the Adoption Act, nor does § 42-2-603(2), MCA, indicate whether it refers to legal custody or physical custody. Nevertheless, “physical custody” is defined in the Uniform Child Custody Jurisdiction and Enforcement Act (Title 40, chapter 7, MCA) at § 40-7-103(14), MCA, as “the physical care and supervision of a child.” “Legal custody” is defined in the Youth Court Act, again at § 41-5-103, MCA, as follows:
(29) (a) “Legal custody” means the legal status created by order of a court of competent jurisdiction that gives a person the right and duty to:
(i) have physical custody of the youth;
(ii) determine with whom the youth shall live and for what period;
(iii) protect, train, and discipline the youth; and
(iv) provide the youth with food, shelter, education, and ordinary medical care.
(b) An individual granted legal custody of a youth shall personally exercise the individual’s rights and duties as guardian unless otherwise authorized by the court entering the order. [Emphasis added.]
¶40 Under these statutory definitions, although S.J.D. has “physical custody” of K.P.M. by virtue of the fact that she is married to and living with I.J.C. who has “legal custody” of K.P.M., S.J.D. is not the actual “guardian” of K.P.M. with “status ... created and defined by law.” Rather, that position is held by I.J.C., and, although S.J.D. asserted in her petition to terminate that she was filing the petition in conjunction with I.J.C., I.J.C. did not sign the petition.
¶41 Consequently, because S.J.D. was not one of the parties authorized to bring a petition for termination of parental rights under § 42-2-603(2), MCA, she did not have standing to bring said petition.
¶42 The Majority claim that “§ 42-2-603(2), MCA, does not state that the only persons or entities that may file a petition to terminate parental rights are those that fall into one of the listed categories.” Opinion, ¶ 18. However, the Majoriy choose to ignore that nowhere in *182 § 42-2-603(2), MCA, does it state that a petition for termination of parental rights may be brought by anyone other than those persons or entities that fall into one of the listed categories. It is axiomatic that it is not the role of a judge to insert what has been omitted from a statute or to omit what has been inserted. Section 1-2-101, MCA. Moreover, under the canon expressio unius est exclusio alterius, we interpret the expression of one thing in a statute to imply the exclusion of another. McCormick v. Brevig, 2007 MT 195, ¶ 48, 338 Mont. 370, 169 P.3d 352 (citing State v. Good, 2004 MT 296, ¶ 17, 323 Mont. 378, 100 P.3d 644).
¶43 In addition, while a stepparent has standing to file a petition for adoption under the criteria set forth in § 42-4-302(1), MCA, a stepparent does not have standing to file a petition for termination of parental rights. As noted previously, § 42-1-107(1), MCA, provides that “[a]n adoption decree may not be entered if the child who is the subject of an adoption proceeding is not legally free for adoption,” and a child is not legally free for adoption until the parental rights of the birth parent or parents have been terminated by a court. Section 42-2-602, MCA.
¶44 The Majority contend that this interpretation of the statutes would mean that no one would have standing to petition to terminate B.J.M.’s parental rights because there is no guardian. Opinion, ¶ 19. This is entirely untrue. The Uniform Parentage Act (Title 40, chapter 6, part 1, MCA) defines the parent and child relationship as “the legal relationship existing between a child and the child’s natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations.” Section 40-6-102(2), MCA (emphasis added). In an earlier proceeding, the District Court granted I.J.C.’s petition to establish that I.J.C. was KP.M.’s natural father and to give I.J.C. legal custody of K.P.M. As already noted, a “guardian” means “an adult... who is responsible for a youth and has the reciprocal rights, duties and responsibilities with the youth ....” Section 41-5-103(21), MCA. Clearly I.J.C. is K.P.M.’s guardian with all the concomitant rights, duties and responsibilities to K.P.M., and, as such, I.J.C. had standing to file for termination of B.J.M.’s parental rights pursuant to § 42-2-603(2), MCA. However, he failed to do so.
¶45 I also disagree with the Majority’s position that because S.J.D. had standing to petition for adoption of K.P.M., she also had standing to petition to terminate B.J.M.’s parental rights. Opinion, ¶ 14. While § 42-4-302(3), MCA, states that “[a] petition for adoption by a stepparent may he joined with a petition for termination of parental *183 rights [emphasis added],” that does not give a stepparent standing to actually file a petition for termination. Rather, a stepparent may join their petition for adoption with the natural parent’s petition for termination of parental rights. This more logically follows from the plain language of the statute since a stepparent needs the custodial parent’s consent to adopt under §§ 42-4-303, MCA. Thus, contrary to the Majority’s contentions, S.J.D. did not seek and obtain the termination of B. J.M.’s parental rights “in compliance with § 42-4-310, MCA.” Opinion, ¶ 17 (emphasis added).
¶46 The Majority also contend that previous applications of Title 42 are consistent with the Majority’s interpretation. Opinion, ¶ 20. The Majority fail to point out however that all but one of the cases cited in the Opinion as a “previous application” of Title 42 actually pre-date Title 42 as it exists today. Title 42 was completely revised in 1997, see 1997 Mont. Laws, chapter 480, and the statute providing the criteria for termination of parental rights was added at that time long after most of the cases cited by the Majority were decided. Prior to 1997, it was only necessary for a stepparent to bring a petition for adoption; a petition for termination of parental rights was not required. See Title 40, chapter 8, MCA (1995) (repealed 1997 Mont. Laws, chapter 480, § 171).
¶47 Furthermore, one of the cases the Majority cite, Matter of Adoption of J.B.T., 250 Mont. 205, 819 P.2d 178, rims counter to the Majority’s argument as the petition in that case was brought by both the natural mother and the stepfather. This Court also stated in that case that “[b]ecause the natural parent can forever lose parental rights, this Court requires strict compliance with the statute.” Adoption of J.B.T., 250 Mont. at 208, 819 P.2d at 179 (emphasis added). As to the only case cited by the Majority that was decided after the 1997 revisions to the Adoption Act, In re Adoption of C.W.D., 2005 MT 145, 327 Mont. 301, 114 P.3d 214, the issue of standing was not raised or decided by this Court. However, our failure to sua sponte raise the question of standing in that case does not permit this Court to perpetuate that error.
¶48 Based on the foregoing, I would hold that the District Court lacked jurisdiction to grant S.J.D.’s petition to terminate B.J.M.’s parental rights to K.P.M. because S.J.D. did not have standing to bring such a petition. I dissent from the Court’s failure to so hold.
¶49 I also dissent from the Opinion in this case because S.J.D. did not follow the required statutory procedure in petitioning to adopt K.P.M.
*184 ¶50 This Court has repeatedly held that “a natural parent’s right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures.” In re J.N., 1999 MT 64, ¶ 12, 293 Mont. 524, 977 P.2d 317 (quoting In re E. W., 1998 MT 135, ¶ 12, 289 Mont. 190, 959 P.2d 951; Matter of R.B., 217 Mont. 99, 103, 703 P.2d 846, 848 (1985)). Hence, each applicable statutory requirement must be adequately addressed before a district court may terminate an individual’s parental rights. In re J.N., ¶ 12 (citing In re E.W., ¶ 12; Matter of R.B., 217 Mont. at 103, 703 P.2d at 848). Moreover, “[t]he party seeking to terminate an individual’s parental rights has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been met.” In re J.N., ¶ 12 (citing In re E.W., ¶ 12; Matter of J.L., 277 Mont. 284, 288, 922 P.2d 459, 461 (1996)) (emphasis added).
¶51 Of particular relevance to the instant case are §§ 42-4-310 and 42-2-603, MCA. Section 42-4-310, MCA, provides that “[a] stepparent who desires to adopt a stepchild shall obtain an order of termination of parental rights of the child’s noncustodial parent prior to or contemporaneously with the petition to adopt [emphasis added].” Contrary to the statement at ¶17 of the Opinion, S. J.D. did not comply with this statute. S. J.D. filed her petition to adopt K.P.M. on March 13, 2007. She did not, as required by § 42-4-310, MCA, obtain an order of termination of B. J.M.’s parental rights “prior to or contemporaneously with” filing her petition to adopt K.P.M. In fact, she did not file a petition to terminate B. J.M.’s parental rights to K.P.M. until May 8, 2007, almost two months after filing the petition to adopt.
¶52 The Maj ority assert that following the correct statutory procedure is not a matter that was raised in the appellate briefs, nor was it an issue before the District Court in its consideration of the petition to terminate parental rights. Opinion, ¶ 19. On the contrary, the record shows that B.J.M. raised this issue in her “Hearing Brief’ filed in the District Court on January 23, 2008. There B.J.M. argued that S.J.D.’s petition was “deficient” because S.J.D. did not follow the criteria set forth by the Legislature in Title 42. In support of her argument, B.J.M. specifically cited to §§ 42-2-301, 42-4-310, and 42-5-101, MCA. B.J.M. raised this issue again, citing to the same statutory criteria, in her “Post Hearing Brief’ filed with the District Court on February 19, 2008.
¶53 Moreover, B.J.M. stated at page 11 of her Appellant’s Brief:
The party seeking to terminate parental rights must demonstrate by clear and convincing evidence that the statutory *185 requirements for termination have been met. In re the Matter of A.S., Youth in Need of Care, 2006 MT 281, ¶ 6, 334 Mont. 280, 146 P.3d 778. [Emphasis added.]
B.J.M. also stated at page 19 of her Appellant’s Brief and again at page 8 of her Reply Brief that S.J.D. “has failed to provide clear and convincing evidence that the statutory requirements for termination have been met.” Even so, whether the correct statutory procedures have been followed is a threshold issue in every case.
¶54 In addition, § 42-5-101, MCA, provides:
(2) There must be attached to or accompanying the petition [for adoption]:
(a) any written consent required by 42-2-301;
(b) a certified copy of any court order terminating the rights of the child’s parents .... [Emphasis added.]
Although S.J.D. claimed in her Petition for Adoption that B.J.M.’s written consent was attached to the petition, that was not the case as B.J.M never consented to the adoption. Because B.J.M.’s parental rights had not been terminated at the time the Petition for Adoption was filed, S.J.D. did not and could not attach “a certified copy of any court order terminating the rights of the child’s parents,” as provided for in § 42-5-101(2)(b), MCA, to the Petition for Adoption.
¶55 Consequently, I would reverse the District Court’s decision to terminate B.J.M.’s parental rights because S.J.D. did not follow the statutory requirements for bringing her petitions and I dissent from this Court’s failure to so hold.
¶56 Furthermore, while the Court places great emphasis on B.J.M.’s lifestyle at the time she placed K.P.M. in I.J.C.’s care, no mention is made of the fact that B.J.M. has worked hard to turn her life around. She is now married, has another child and a steady job. The Court also does not mention that the death of her first child, while she was pregnant with K.P.M., sent B.J.M. into a depression that contributed to her inability to properly care for K.P.M. Although I do not condone the path she chose to take after the loss of her child, I do recognize the fact that she had the sense to place K.P.M. in a stable environment.
¶57 The District Court terminated B.J.M.’s parental rights on the basis that she had abandoned K.P.M. While I applaud I. J.C. and S.J.D. for the love and care they have given K.P.M. in the intervening years, I cannot help but note that some small part of the blame for B.J.M.’s abandonment of K.P.M. was caused by I.J.C.’s continued refusal to allow B.J.M. to see him-facts conveniently left out of the Opinion in this case.
*186 ¶58 I make one final observation. The Legislature adopted significant amendments to the Adoption Act in 1997. If one reviews the legislative history to those amendments, one is struck by the Legislature’s intent to preserve the parental rights of the biological parents to a child. Indeed, this follows the policy of this State “to support and preserve the family as the single most powerful influence for ensuring the healthy social development and mental and physical well-being of Montana’s children.” Section 41-7-102(1), MCA (the Montana Family Policy Act enacted in 1993). While no doubt well-meaning, the Majority do not respect that legislative commitment. Rather, the Majority’s approach ignores the statutory framework which the Legislature set out to preserve the fundamental rights of biological parents.
¶59 I dissent.
JUSTICE COTTER joins the Dissent of JUSTICE NELSON.

 The Child Abuse and Neglect Act does not apply here because a termination of parental rights under that Act may only be brought by the county attorney, the attorney general, or an attorney hired by the county, § 41-3-422(2), MCA, none of whom did so in this case.